IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 7:14-CV-145-FL

| | |
|---|---|
| TOYA WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| LNV CORPORATION; MGC ) | |
| MORTGAGE, INC.; ) | |
| DOVENMUEHLE MORTGAGE, ) | |
| INC.; and HUTCHENS LAW FIRM, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on motions to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), separately filed by defendants LNV Corporation ("LNV"), MGC Mortgage, Inc. ("MGC"); and Dovenmuehle Mortgage, Inc. (collectively, "Corporate Defendants"); (DE 36) and defendant Hutchens Law Firm ("Hutchens") (DE 38). Plaintiff failed to respond. In this posture, the issues raised are ripe for ruling. For the reasons set forth more specifically herein, the court grants defendants' motions.

**BACKGROUND**

Plaintiff commenced this matter with a motion for leave to proceed *in forma pauperis*, which was granted by order entered September 4, 2014. The original complaint named as defendants only LNV and MGC. On November 5, 2014, plaintiff filed amended complaint. (Am. Compl.) (DE 14). The amended complaint originally designated as plaintiff another individual, Harry Smith ("Smith"),

alleged to be a co-resident of plaintiff's home at 104 Stoney Creek Lane, Leland, NC 28451 (the "Property") (Am. Compl. ¶ 2). Two days after the amended complaint was filed, defendants LNV and MGC filed a motion to dismiss the original complaint. By order entered November 17, 2014, the court dismissed Smith from the action for failure to prosecute, and denied as moot the motion filed by defendants LNV and MGC.

The amended complaint alleges defendants violated "North Carolina Debt Collection Laws," as well as the Fair Debt Collections Practices Act, 15 U.S.C. § 1692. Plaintiff seeks declaratory relief, compensatory damages, pre- and post-judgment interest, costs of litigation, punitive damages, and other proper legal or equitable relief.

Plaintiff's complaint refers to and incorporates a number of documents, including documents that she alleges have been publicly filed.[1] Defendants have also attached a number of documents

---

[1] Specifically, plaintiff has attached a "Notice of Breach" dated August 7, 2013, from defendant MGC to Smith (Pl.'s ex. A) (DE 14-1); a "Good Faith Discovery Notice: Verification of Proof of Claim Requested" from plaintiff and Smith to defendant MGC (Pl.'s Ex. B) (DE 14-2); a "Statutory Notice," dated December 9, 2013, from defendant Hutchens to Smith and plaintiff (Pl.'s Ex. C, 1-3) (DE 14-3); a "Notice of Intention to Collect Attorney Fees," dated February 5, 2014, from defendant Hutchens to Smith and plaintiff (Id., 6); a separate letter dated February 5, 2014, from defendant Hutchens to Smith and plaintiff (Id.,7-8); a letter from defendant Hutchens to Smith and plaintiff dated March 7, 2014 (Id., 4-5); a "Dispute of Debt and Notice of Default" from plaintiff and Smith to defendants Hutchens and LNV (Pl.'s Ex. D) (DE 14-4); a "Good Faith Discovery Notice: Verification of Proof of Claim Requested," from plaintiff and Smith to defendant MGC (Pl.'s Ex. E) (DE 14-5); and "Copies of Publicly Listed Documents" (Pl.'s Ex. F) (DE 14-6), which include a promissory note dated May 18, 2006 (Id., 1-3); a Prepayment Penalty Addendum to the Note dated May 18, 2006 (Id., 4); an allonge addendum dated May 26, 2006, signed by the Vice President of Mercantile Mortgage Corporation, (Id., 5); a deed of trust dated May 18, 2006 (Id., 6-19); two copies of an assignment of deed of trust dated February 11, 2009 (Id., 20-23, 26); and an undated allonge to the note, signed by the Vice President - Admin Division of HSBC Mortgage Services Inc. (Id., 25).

2

to their motions,[2] the authenticity of which has not been disputed. The complaint and these attachments set forth the following facts:[3]

On May 18, 2006, plaintiff and Smith obtained a loan in the amount of $218,500. (Pl.'s Ex. F, 1) (DE 14-6). The loan was evidenced by a promissory note ("Note") identifying Mercantile Mortgage Company as the lender. (Id.). An allonge to the Note, dated May 26, 2006, and signed by the Assistant Vice President of Mercantile Mortgage Company, provides that the Note is to be paid to the order of HSBC Mortgage Services Inc. (Id., 5). The Note was secured by deed of trust ("Deed of Trust"), executed by plaintiff, and recorded in Book 2392, page 1352 of the Brunswick County Registry. (Id., at 6, 18). The Deed of Trust establishes a security interest in the Property (Id., 8). It identifies plaintiff as "Borrower," Mercantile Mortgage Company as "Lender," and, and names as beneficiary Mortgage Electronic Registration Systems, Inc. ("MERS"), as well as "the successors and assigns of MERS." (Pl.'s Ex. F, 6). It states that MERS "has the right . . . to foreclose and sell the Property; and to take any action required of Lender." (Id., 8). Further, the Deed of Trust provides that the Lender "may charge Borrower fees for services performed in connection with Borrower's default . . . including, but not limited to, attorney's fees, property inspection and valuation fees." (Id., 15).

---

[2] Both of the motions to dismiss attach the same documents. Specifically, defendants attach the May 18, 2006 promissory note (Defs.' Ex. A) (DE 37-2); the deed of trust (Defs.'Ex. B) (DE 37-3); an order authorizing foreclosure from the Brunswick County Clerk of Superior Court dated August 27, 2014 (Defs.' Ex. C) (DE 37-4); a Notice of Appeal dated September 5, 2014 (Defs.' Ex. D) (DE 37-5); and an amended order dismissing the appeal from the Brunswick County Superior Court, dated November 21, 2014 (Defs'. Ex. E) (DE 37-6).

[3] "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, on a motion to dismiss." Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013). However, courts may properly take judicial notice of matters of public record. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In addition, courts may consider documents attached to the complaint, or attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." Id. When a plaintiff does not challenge the authenticity of a document attached to the defendant's motion to dismiss, the court may presume the document is authentic. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

On February 11, 2009, MERS executed an assignment ("Assignment") of the Deed of Trust to defendant LNV. (Id., 21-22). The assignment was recorded in the Brunswick County Register of Deeds on June 23, 2009. (Id.). A second allonge to the note, undated, and signed by the Vice President - Admin Division of HSBC, provides that the Note is to be paid to the order of LNV. (Id., 25) (both this allonge and the May 26, 2006, allonge are collectively referred to as the "Allonges").

On or about August 7, 2013, defendant MGC sent plaintiff a "Notice of Breach," alleging that plaintiff had failed to make her monthly payments of $2,168.35 under the Note and the Deed of Trust from April 1, 2013, to August 1, 2013. (Am. Compl., ¶ 16); (Pl.'s Ex. A) (DE14-1). The Notice of Breach further provides "late charges and other charges have also accrued in the amount of $2,385.57," amounting to a total past due amount of $11,913.86. (Id.). On August 25, 2013, plaintiff provided defendants with a "Good Faith Discovery Notice: Verification of Proof of Claim." (Am. Compl., ¶ 17); (Pl.'s Ex. B) (DE 14-2). Defendants responded on September 17, 2013, providing copies of publicly listed documents filed in the Brunswick County Recorder's office. (Am. Compl. ¶ 18).

On December 9, 2013, defendant Hutchens sent plaintiff a "Statutory Notice" stating that that her mortgage loan was in default. (Am. Compl. ¶ 19) (Pl.'s Ex. C) (DE 14-3). The notice calculated the total amount due on past monthly payments, and provided other itemized charges alleged to be necessary "to bring the loan current." (Pl.'s Ex. C, 1). It also stated that the debt was owed to LNV, informed plaintiff that she may dispute the debt, and furnished other information regarding her loan. (Pl.'s Ex. C, 1-3).

On February 5, 2014, defendant Hutchens provided plaintiff with a notice of intention to collect attorney fees unless the outstanding balance due under the mortgage loan was paid within

4

five days. (Pl.'s Ex. C, 6). That same day, defendant Hutchens also provided another statement providing the total amount due, the daily interest rate, and other expenses that defendant Hutchens alleged that LNV had claimed owed. (Pl.'s Ex. C, 7-8).

Defendant Hutchens provided another notice on March 7, 2014, informing plaintiff that she had defaulted under the terms of the Note, and calculating the amount of principal and interest, providing the daily interest rate charge, stating the fees due and total expenses that LNV contended to be owed, and the outstanding total of debt owed. (Pl.'s Ex. C, 4-5). The March 7, 2014 notice also stated that defendant LNV had elected to proceed with foreclosure. (Id., 4). Plaintiff alleges that she "is without specific knowledge and evidence that supports defendant's claims and allegations." (Am. Compl., ¶ 19).

On or about March 28, 2014, plaintiff sent to defendants Hutchens and LNV a "Dispute of Debt and Notice of Default," denying that she owed the amount claimed. (Id., ¶ 20) (Pl.'s Ex. D) (DE 14-4). Plaintiff asserted that "[t]here is no evidence that LNV Corporation is entitled to be named the Beneficiary under this debt . . . . There is no chain of title naming LNV Corporation as the real party of interest or holder of the negotiable instrument." (Id., 1).

On April 1, 2014, plaintiff submitted to defendant MGC a "Good Faith Discovery Notice: Verification of Proof of Claim Requested." (Am. Compl., ¶ 21), (Pl.'s Ex. E) (DE 14-5). In this letter, plaintiff asserts that she has "a right to know who the true party of interest in this transaction is," and demands that defendant MGC furnish the "ORIGINAL WET INK" Note and Deed of Trust. (Pl.'s Ex. E, 1). In response, defendants provided copies of public documents in the Brunswick County Recorder's office, including the Note, Deed of Trust, the Allonges, and the Assignment. (Am. Compl., ¶ 22) (Pl.'s Ex. F).

5

On August 27, 2014, the Clerk of Superior Court of Brunswick County entered order allowing Substitute Trustee Services, Inc. to foreclose upon the Deed of Trust and conduct a foreclosure sale. (Defs'. Ex. C). ("Brunswick County Foreclosure Order"). Plaintiff appealed, and an amended order dismissing the appeal issued from the Brunswick County Superior Court on November 21, 2014. (Defs'. Ex. D).

Plaintiff alleges that defendants have committed "intentional acts of providing multiple erroneous, fabricated amounts allegedly due and owing." (Am. Compl., ¶ 28). She further alleges that the claims of debt do not have any merit, and she has not been able to determine the amount lawfully owed in order to satisfy any legitimate debt. (Id., ¶ 29). She alleges that defendants knew they were not entitled to collect on the debt. (Id., ¶ 41). Defendants' acts have caused plaintiff emotional distress, confusion, and anxiety, and harmed plaintiff's consumer purchasing power and consumer credit reports. (Id., ¶¶ 33, 42).

## DISCUSSION

A.  Standard of Review

   1.  Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which

6

subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. "[T]he facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). When the defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

   2.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the

7

mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

In evaluating the complaint, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted). Similarly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, on a motion to dismiss" under Rule 12(b)(6). Clatterbuck, 708 F.3d at 557. However, courts may properly take judicial notice of matters of public record. Philips, 572 F.3d at 180. In addition, courts may consider documents attached to the complaint, or attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." Id. When a plaintiff does not challenge the authenticity of a document attached to the defendant's motion to dismiss, the court may presume the document is authentic. Am. Chiropractic, 367 F.3d at 234.

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir.1994). Nevertheless, Erickson does not undermine the requirement that a pleading contain "more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555). Furthermore, while a *pro se* complaint must be construed liberally, it

8

is not the court's obligation "to discern the unexpressed intent of the plaintiff." Laber v. Harvey, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

B.     Analysis

The two motions to raise nearly-identical arguments.[4] Defendants argue plaintiff's claim is barred by the Rooker-Feldman doctrine, and also argue that plaintiff fails to state a claim on which relief can be granted. Because Rooker-Feldman challenges the court's jurisdiction, that argument must be addressed first.

   1.     Lack of Subject Matter Jurisdiction/Rooker Feldman

In Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), the United States Supreme Court held that a litigant who lost in state court could not seek review of the state court judgment in a federal district court. Id. at 415–16. In District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), the Court reaffirmed the basic rule laid down in Rooker, and further concluded that federal district courts do not have subject matter jurisdiction over claims the state court did not directly decide, but that are nevertheless "inextricably intertwined" with a state court decision. Id. at 486–87; see also Plyler v. Moore, 129 F.3d 728, 731 (4th Cir.1997). Together, these cases formulate the "Rooker-Feldman doctrine" as a limitation on the subject matter jurisdiction of federal district courts. See Plyler, 129 F.3d at 731.

In 2005, the Supreme Court clarified the scope and application of Rooker-Feldman doctrine, and held that it does not supplant ordinary preclusion principles. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, (2005). The Court confined the doctrine to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the

---

[4] Defendant Hutchens' supporting memorandum raises two additional arguments, specific to the allegations against it, which this order need not address.

district court proceedings commenced and inviting district court review and rejection of those judgments." Id. It held that the doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Id. at 293. Rather, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. (internal quotation marks omitted). Accordingly, the Rooker-Feldman analysis centers on "whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself." Davani v. Va. Dep't of Transp., 434 F.3d 712, 713 (4th Cir. 2006).

Defendants argue that Rooker-Feldman bars plaintiff's claims in this case because the remedies sought would require the court to invalidate judicial findings made in the Brunswick County Foreclosure Order. However, plaintiff's allegations do not specifically discuss the Brunswick County foreclosure proceedings or order. Nor does plaintiff seek redress for injuries caused by that order, but rather for injuries caused by defendants' actions in the course of the debt collection process. In these circumstances, Rooker-Feldman may not apply. See Davani, 434 F.3d at 713. While the instant dispute may involve issues that were litigated in state court, those issues are properly subject to preclusion principles, not Rooker-Feldman. "Preclusion, of course, is not a jurisdictional matter." Exxon, 544 U.S. at 293. Accordingly, the court proceeds now to consider the sufficiency of plaintiff's allegations.

10

2. "North Carolina Debt Collection Laws"

Plaintiff's claim for a violation of "North Carolina Debt Collection Laws" cites to the North Carolina Debt Collection Act ("NCDCA"), N.C Gen. Stat. § 75-50 *et seq.*, and accordingly, the court will analyze her allegations under that statute. The NCDCA prohibits a "debt collector" from using unfair debt collection practices, including threats, coercion, harassment, unreasonable publications, deceptive representations, or other unconscionable means to collect a "debt" from a "consumer." Ross v. Wash. Mut. Bank, 566 F. Supp. 2d 468, 479 (E.D.N.C. 2008).

To state a claim under the NCDCA, a plaintiff must allege three threshold requirements: (1) that the plaintiff is a consumer who incurred an obligation; (2) that the obligation incurred is debt; and (3) that the party attempting to collect the obligation is a debt collector." Vecchione v. Prof'l Recovery Consultants, Inc., No. 1:13-CV-584, 2014 WL 6972397, at *5 (M.D.N.C. Dec. 9, 2014); Orban v. Nationwide Tr. Servs., Inc., No. 5:12-CV-16, 2014 WL 6476235, at *8 (W.D.N.C. Nov. 19, 2014). In addition, because the NCDCA appears in Article 2 of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*, it also must satisfy the generalized elements of unfair and deceptive trade practices: 1) an unfair or deceptive act, 2) in or affecting commerce, 3) that has proximately caused plaintiff injury. Ross, 566 F. Supp. 2d at 479; Godfredson v. JBC Legal Grp., P.C., 387 F. Supp. 2d 543, 548 (E.D.N.C. 2005).

Plaintiff's allegations, in light of documents attached to the complaint and motion to dismiss, are insufficient to meet the generalized elements of unfair and deceptive trade practices. The Note evidences that plaintiff obtained a loan. Plaintiff was subsequently party to a Deed of Trust which named MERS as nominee for the lender, able to take any action required of the lender. MERS, in

11

turn, assigned the Deed of Trust to LNV.[5] Plaintiff does not dispute the authenticity of these particular documents, and fails to provide sufficient allegations to support that these documents do not evidence a valid debt. Moreover, she does not provide any factual allegations supporting her conclusory assertions that the amounts included in the letters received from defendants MGC or Hutchens were "erroneous" or "fabricated." (Am. Compl. ¶ 28). Plaintiff further alleges that she "could make no true accounting of the amounts" (Id. ¶ 29). However, this allegation presumes that the accounts provided were false, without alleging a factual basis for believing them to be so.

Plaintiff's remaining allegations relevant to her "North Carolina Debt Collection Laws" claim consist of citations and to paraphrases of specific provisions of the NCDCA, including allegations that defendants violated the act by "falsely representing the character, extent and amount of the debt," or "distributing written communication which falsely represent to be a document a legal document [sic]." (Id. ¶¶ 30-31). Plaintiff provides no specific facts showing how the documents submitted falsely represented the amount of debt, or specific allegations as to what particular documents were false legal documents. See Joy v. MERSCORP, Inc., 935 F. Supp. 2d 848, 859 (E.D.N.C. 2013) (rejecting conclusory allegations that loan documents were "false," "fictitious" or "fraudulently filed"). Plaintiff also alleges that defendants violated the NCDCA by "falsely representing that an existing obligation may be increased by additional fees or charges." (Id. ¶ 32). Although the correspondence does state that attorney's fees, late charges and other fees must be paid, (Pl.'s Ex. C, 1, 4) the Deed of Trust itself provides that plaintiff may be charged fees for services performed in connection with default, including attorney's fees. (Ex. F, 15). Plaintiff fails

---

[5] The role and authority of MERS with respect to deeds of trust has been the focus of lawsuits nationwide. For a discussion of MERS and its business practices, see Joy v. MERSCORP, Inc., 5:10-CV-218-FL, 2012 WL 7804203, at *11-13 (E.D.N.C. May 15, 2012), mem. and recommendation adopted in relevant part, 935 F. Supp. 2d 848, 859-60 (E.D.N.C. 2013).

12

to allege facts showing defendants "falsely" made a representation that existing obligations could be increased. Ultimately, her allegations amount to "legal conclusions" and "bare assertions," Nemet Chevrolet, 591 F.3d at 256, and are insufficient to state a claim under the NCDCA. Accordingly, plaintiff's NCDCA claim must be dismissed.

   3. FDCPA

Plaintiff's FDCPA claim fails for the same reasons as her claim under "North Carolina's Debt Collection Laws;" she has failed to provide sufficient factual allegations in support. First, plaintiff suggests that defendants failed to provide proper verification of the debt. Section 1692g of the FDCPA sets forth a process for debt collectors to validate a debt. 15 U.S.C. 1692g. First, the debt collector is to provide the consumer written notice containing, among other information, "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt . . . against the consumer and a copy of such verification . . . will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(a)(4). If the consumer notifies the debt collector of such dispute, the debt collector must cease collection of the debt "until it obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer." Id.

> The "verification"
>
> involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. Consistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999).

13

Plaintiff alleges that, in response to her request, sent August 25, 2013, defendants provided her copies of publicly listed documents filed in the Brunswick County Recorder's office. (Am. Compl. ¶ 18). She likewise alleges that these documents "fail[ ] to prove the existence of the alleged debt owed to either defendant." (Id.). Plaintiff alleges that she again requested verification from defendants on or about March 28, 2014, and April 1, 2014. She alleges that she received the documents attached to her complaint at Exhibit F in response, which include the Note, Allonges, Deed of Trust, and Assignment. Plaintiff alleges that defendants' responses "fail[ ] to prove the existence of the alleged debt," (Am. Compl. ¶¶ 18, 22) – another legal conclusion, or alternatively a bare assertion, that the court is not bound to accept.

Even accepting plaintiff's assertion that the documents do not prove the existence of the debt, this fails to state a claim that defendants did not provide satisfactory verification under Section 1692g. As Chaudhry holds, "verification" only requires a showing that the amount demanded "is what the creditor *is claiming* is owed," Chaudhry, 174 F.3d at 406, not conclusive proof of the debt. See also Wittenberg v. Wells Fargo Bank, N.A., 852 F. Supp. 2d 731, 753 (N.D.W. Va. 2012) ("[V]erification of a debt does not obligate a debt collector to investigate whether the debt is valid."). Plaintiff has not provided sufficient allegations to show how defendants' documents failed to satisfy her request. See Bryant v. Wells Fargo Bank, Nat'l. Assoc., 861 F. Supp. 2d 646, 664 (E.D.N.C. 2012) (holding that defendants met verification requirement when the documents submitted provided the information that plaintiffs had requested).

14

Plaintiff suggests defendant failed to provide proper verification, where they did not provide the "original wet ink" documents she requested. (Pl.'s Ex. D, 1). Such is not required. Defendants provided copies of the Note, allonges, Deed of Trust, and Assignment. While these may not have been the "original wet ink" documents, they are sufficient to satisfy the verification requirement.

The remainder of plaintiff's FDCPA claim amounts to sentence fragments, citations and paraphrases of various subsections of the FDCPA, accompanied by general assertions unsupported by specific facts. These are the essence of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Plaintiff's allegations are insufficient to state a plausible claim for relief under the FDCPA. Id. Accordingly, this claim must also be dismissed.

## CONCLUSION

For the reasons explained above, defendants' motions to dismiss (DE 36, 38) are GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 23rd day of February, 2015.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge